IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLEN ELLYN PHARMACY, INC., | ) | |
| on behalf of plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | |
| Plaintiff, | ) | 14-cv-8132 |
| | ) | |
| v. | ) | |
| | ) | |
| EXP PHARMACEUTICAL SERVICES CORP., | ) | Honorable Judge Pallmeyer |
| and JOHN DOES 1-10, | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiff Glen Ellyn Pharmacy, Inc. individually and on behalf of a Settlement Class of similarly situated persons, by class counsel, Edelman, Combs, Latturner & Goodwin, LLC, respectfully submits the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement with Defendant EXP Pharmaceutical Services Corp. ("EXP"). This Court preliminarily approved the Agreement on April 13, 2015.

In summary, subsequent to the entry of preliminary approval, notice of the settlement was delivered successfully via fax and supplemental mailing to 390 of the total 412 class members on the list provided by defendant. Specifically, notice of the Settlement was sent by plaintiff's counsel's agent, Profax, Inc. ("Profax"), to 412 facsimile numbers identified by Defendant as potential Class Members. A total of 332 transmissions were ultimately successful. (*See* Declaration of Andrew Barnett, Appendix A) Plaintiff's Counsel (Edelman, Combs, Latturner & Goodwin, LLC or "ECLG") subsequently used the class member list provided by Defendant to obtain address information and send Notice of the Settlement via U.S. Mail to the remaining 80

1

fax numbers. ECLG caused the mailing of 80 notices to class members. 22 of those mailed notices were returned to ECLG as undeliverable. At least one forwarding attempt was made for envelopes that returned with an alternative address. In total, class counsel was able to send notice to 390 of the 412 potential class members, yielding a 95% success rate. (*See* Declaration of Sarah Smolyansky, Appendix B)

**No** objections have been filed or received by Counsel.  There has been **1** request for exclusion. **60** timely and valid claims were submitted by Settlement Class Members requesting a portion of the settlement fund. **1** additional late, but otherwise valid, claim has been submitted**.** (Appendix B)

Specifically, Plaintiff's counsel received 62 submissions postmarked or faxed by the July 10, 2015 deadline. Of the 62 responses, 2 submissions were found to be invalid because they were submitted on behalf of one or more fax numbers that did not appear on the class list. (Appendix B)

As of the filing date of this Memorandum, 1 claim has been received faxed beyond the claims deadline. Although this claim is untimely, plaintiff submits and Defendant agrees that this claim, which is otherwise valid, be included as a valid claim submission. (Appendix B)

In sum, after notice by fax to the Settlement Class Members a total of **60** valid and unique claim forms have been submitted, or **61** if the late claim is honored.  There have been **no** objections to the settlement by the Settlement Class and **1** request for exclusion. (Appendix B)

I. **OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT.**

Plaintiff filed this action on October 17, 2014 in the Northern District of Illinois against Defendant EXP alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), and state law and sought damages individually and on behalf of a putative class.

Subsequent to service, the parties undertook extensive settlement discussions and ultimately, the parties negotiated the settlement at arms-length and in good faith. The Agreement was presented to the Court for preliminary approval. As demonstrated below, the parties' Agreement is now ripe for this Court's consideration and final approval.

## II.     THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT.

### A.     The Preliminary Approval Order.

On April 13, 2015, this Court entered an order granting preliminary approval of the Agreement reached between the parties and certifying the following class for settlement purposes:

> All persons and entities who were subscribers to fax numbers that were sent faxes by or on behalf of EXP between October 17, 2010 and October 18, 2014, promoting the commercial availability or quality of its property, goods or services and which do not contain an opt out notice as described in 47 U.S.C. § 227.

In the Preliminary Approval Order ("Order"), the Court specifically found that the proposed terms of the Agreement satisfied all of the elements of Federal Rules of Civil Procedure 23(a) and 23(b)(3). The Order further established a procedural framework for the final approval of the Agreement. The Order required that notices be sent to the members of the Class, set deadlines and procedures for submission of claims, requests for exclusion, and objections to the settlement, and set an August 26, 2015 final approval hearing.

### B.     The Class Notice.

As stated above, subsequent to the entry of the preliminary approval order, notice of the Agreement was sent via facsimile by Profax, Inc. to the 412 fax numbers identified in records produced by Defendant as belonging to Class Members. Of the 412 transmissions, there were a total of 106 fax numbers that were unsuccessful after at least two attempts. Approximately three weeks after the initial transmission date, class counsel directed Profax, Inc. to resend the notice

to the 388 numbers on behalf of which claims had not yet been submitted, ultimately reaching a total of 390 of the 412 Class Members via facsimile transmission. (Appendix A)

Class counsel then used the class member list provided by Defendant to obtain address information and send Notice of the Settlement via U.S. Mail to those class members who were not reached via facsimile. Of the 80 class members who did not receive notice via facsimile, class counsel was able to locate a physical address for and send the notice to each of the 80 class members via First Class U.S. Mail on June 5, 2015. A total of 22 undeliverable notices were returned to class counsel. Forwarding attempts were made for any notices that were returned with a forwarding address. (Appendix B) Consequently, mailed notice was successfully delivered to 58 class members. In sum, the class notice was successfully delivered to 390 class members (332 by fax, and 58 by mail), or 95% of the Class. (Appendix B)

As of the filing of this Memorandum, **60** valid and unique claim forms have been submitted for the Settlement Class, and **1** late claim was received after the July 10, 2015 deadline. **No** objections and **1** request for exclusion have been received from the Settlement Class.

    **C.**    **The Value of the Agreement.**

Plaintiff and Settling Defendants entered into a class action Settlement Agreement. Specifically, the terms of the Agreement are as follows:

    1.    <u>Settlement Fund</u>. Subject to Court approval, Defendant agrees to pay the sum of $35,000.00 to a settlement fund (the "Settlement Fund"). The Settlement Fund shall be distributed as follows:

    (a)    Payment of $2,000 to Plaintiff Glen Ellyn Pharmacy, Inc. as an incentive award for its services as a class representative.

    (b)    Payment of attorney's fees in the amount of $11,666.66 which

                    amount represents 1/3 of the Settlement Fund to Plaintiff's Counsel Edelman, Combs, Latturner & Goodwin, LLC.

    (c)    Reimbursement to Plaintiff's counsel of reasonable costs of notice and administration of the settlement. To date, a total of $35.07 related to faxing notice and administrative expenses has been incurred causing notice upon Class Members. In addition, the estimated expenses for delivery of checks to the Settlement Class amount to $159.00. Thus, Plaintiff's counsel seeks reimbursement of $194.07 in additional costs. This amount represents an increase of $43.50 from that requested in Plaintiff's Petition for Attorney's Fees submitted on June 12, 2015 (*Docket No. 39*) and is due to 18 additional claims having been submitted since that date.

    (c)    After payments set forth in subparagraphs (a) - (b) of this Paragraph, the balance of the Settlement Fund shall be distributed pro rata among those members of the Settlement Class who returned a valid claim form.

In sum, **61** Settlement Class Members submitted valid claims. Each Class Member is entitled to $346.54[1]. Settlement Class members shall be paid by checks void 90 days after issuance.

    2.    <u>Unclaimed or Undistributed Settlement Funds</u>. If the Court allows the payments set forth above, including the incentive award to Plaintiff and the attorney's fees and costs petitioned for, the only funds that might remain in the settlement account are those that may result from Class Members' failure to timely negotiate their settlement checks. Additional funds may also exist as the remainder in the account following the payments set out in subparagraphs (a) and (b) of paragraph 1, above, may not be equally divisable amongst the 61 valid claimants. The parties intend, subject to Court approval, that all amounts resulting from uncashed checks or funds that could not otherwise be distributed shall be distributed as a *cy pres* award to an organization to be selected by the parties and approved by the Court. The payments to the *cy pres* recipient will occur within 30 days following the last void date of the Settlement

---

[1] Should the Court decide that the late claim form submission should not be permitted, the pro rata distribution will be $352.32 per class member.

5

Class members' settlement checks.

       3.    <u>Attorney's Fees and Costs</u>. The Settling Defendants have agreed not to oppose Plaintiff's counsel's request for attorney's fees in an amount equal to 1/3 of the Settlement Fund ($35,000.00) plus expenses incurred in administering the settlement. Plaintiff's counsel has incurred expenses in connection with the faxing of notice to class members in the amount of $35.07 (<u>Appendix A</u>) Estimated expenses for delivery of checks to class members amount to $159.00. Thus, Plaintiff's counsel seeks a total of $11,860.74 in attorney's fees *and* costs.

    **D.**    **<u>No Objections Were Received</u>.**

Neither Plaintiff's counsel nor counsel for Defendant has received any objection to the settlement. There was **1** request for exclusion. This should be viewed as an endorsement of the Agreement by the Class.

    **E.**    **<u>No Government Entities Have Objected to the Proposed Settlement</u>.**

In accordance with this Court's Preliminary Approval Order and the Class Action Fairness Act, counsel for Defendant sent notice of the proposed settlement to the Attorney General of the United States as well as the Attorney General of each state in which Class Members reside. *See* Defendant's Notice of Compliance with 28 U.S.C. §1715. (*Docket No. 38*) Neither Plaintiff's counsel nor counsel for Defendant have received any objections from these government officials, nor have any of those officials sought to intervene in this action.

**III.**    **<u>THE COURT SHOULD GRANT FINAL APPROVAL TO THE AGREEMENT</u>**

The Agreement satisfies all the requirements of Rule 23.

    **A.**    **<u>Rule 23(a)(1) - The Class Is So Numerous That Joinder Of All Members Is Impracticable</u>.**

The class consists of 412 persons and/or entities. The Seventh Circuit has recognized that

as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *see also, Newberg on Class Actions*, 3rd ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). The number of Settlement Class Members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

   **B.** **Rule 23(a)(2) - The Claims Of The Class Arise From Common Questions Of Law And Fact.**

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). Rule 23(a)(2) requires only that the class members share at least one question of fact or law in common. *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members").

In the present case, the claim arose from common questions: Whether EXP engaged in a pattern of sending unsolicited fax advertisements; and whether by doing so it thereby violated the TCPA and Illinois state law. These common questions satisfy Rule 23(a)(2).

   **C.** **Rule 23(a)(3) - Named Plaintiff's Claims are Typical Of the Claims Of The Settlement Class Members.**

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1993)("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his

or her claims are based on the same legal theory"); *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)(the typicality requirement is satisfied where the "claims or defenses of the class and the class representative arise from the same event or practice and are based upon the same legal theory").

In this case, Plaintiff's claims arose from the same question of law as those of the Settlement Class Members: Whether the sending of unsolicited fax advertisements by EXP violated the TCPA and Illinois state law. Rule 23(a)(3) is plainly satisfied in this case.

### D. Rule 23(a)(4) - Plaintiff and Class Counsel Have Fairly And Adequately Protected The Interests Of The Class.

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involve two considerations: (1) whether the Plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the Plaintiff has any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

As set forth in the Declaration of Daniel A. Edelman (Appendix C), Plaintiff's counsel is experienced in class action litigation. In addition, Plaintiff does not have any interest in conflict with the Settlement Class Members. Therefore, the named Plaintiff and its counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

### E. The Class Is Appropriate Pursuant to Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Because the claims at issue address the alleged practice of Defendants in sending unsolicited facsimiles, there are no

individual issues and common questions predominate. A class action presents a superior method to fairly and efficiently adjudicate all claims of the Class in this case, within the meaning of Rule 23(b)(3). The Agreement provides Settlement Class Members the opportunity to obtain a portion of the statutory damages provided for by the TCPA without the filing of numerous identical lawsuits.

### F. The Standard For Granting Final Approval To The Class Action Settlement.

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248. Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *General Electric Capital Corporation v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997). The Court considers the following six factors in making this determination:

1. The strength of the plaintiff's case on the merits measured against the terms of the settlement;
2. The complexity, length, and expense of continued litigation;
3. The amount of opposition to the settlement among class members;
4. The presence of collusion in gaining a settlement;
5. The stage of the proceedings; and
6. The amount of discovery completed.

*Id.* (citing *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985)).

The class action settlement in the present case satisfies each of the factors outlined in *GE Capital*. Plaintiff believes that it had a strong chance of prevailing if this case had gone to trial. Defendants dispute Plaintiff's claims and believe that they have strong defenses to Plaintiff's claims and to class certification. However, in order to avoid the uncertainty and expenses

9

presented by further litigation, the parties agreed to settle the dispute between them. The arguable strength of the Class's claims compare favorably to the terms of the settlement, set forth above, satisfying the first of the *GE Capital* factors.

In addition, the settlement is warranted by the complexity, length and expense of continued litigation, satisfying the second *GE Capital* factor. The settlement easily satisfies the third *GE Capital* factor because none of the Class Members have elected to exclude themselves from the settlement and no Class Members have objected to the settlement. There is no evidence of any collusion in reaching the settlement. To the contrary, the above-described payment amounts to Plaintiff and Class Counsel compare favorably to the direct benefits to the Class, thereby satisfying the fourth *GE Capital* factor.

Settlement Class Members who submitted a valid claim will receive a recovery of $346.54 per fax number. This recovery represents 69% of the statutory damages that could be obtained in an individual lawsuit for a non-willful violation of the TCPA.

Finally, the fifth and sixth *GE Capital* factors also support the final approval of this settlement in light of the stage of pre-trial proceedings and the discovery completed to date. The parties reviewed extensive documentation and engaged in protracted negotiations in an attempt to resolve this case. Given the stage of proceedings, the investigation and discovery completed, the proposed settlement satisfies the fifth and sixth *GE Capital* factors.

### IV.     THE ATTORNEY'S FEES AND COSTS ARE REASONABLE.

Pursuant to the Agreement, Class Counsel requests approval of payment of attorney's fees equal to 1/3 of the Settlement Fund in an amount equal to $11,666.66. Plaintiff's counsel also seeks reimbursement of reasonable expenses incurred in sending notice and delivering settlement funds to the class members. The total amount of attorney's fees *and* costs sought is

$11,860.74. Plaintiff's counsel includes experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter. The Seventh Circuit has specifically authorized the district courts to award attorney's fees using the lodestar method or the percentage of fund method. *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998); *In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001).

It has been well established in the Seventh Circuit, and elsewhere, that fee awards based upon a percentage of a recovery are fair and reflect what could have been contracted for in the marketplace. Consumer protection cases, where counsel is retained on a contingent fee basis, are certainly no different. It is well established that when a representative party has created a "common fund" for, or has conferred a "substantial benefit" upon, an identifiable class, counsel for that party is entitled to an award of attorneys' fees from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *In re: Synthroid Marketing Litigation*, 264 F.3d 712, 717 (7th Cir. 2001). When deciding on appropriate attorney compensation in a common-fund case, a court must endeavor to award "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re: Synthroid Marketing Litigation*, 264 F.3d at 718.

The Seventh Circuit in *Synthroid* explained that determination of the market rate for the legal fees should be based in part on the following factors: The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case. *Id.* at 721.

Plaintiff's counsel took this case on a contingent fee basis nearly one year ago, and thus

11

was faced with a significant risk of non-payment. A fee request of 1/3 of the Settlement Fund is also consistent with the marketplace. The market rate for contingent fees in consumer cases such as this is in the 25% to 40% range, depending on various facts and circumstances. *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996), aff'd, 160 F.3d 361 (7th Cir. 1998) (38% awarded); *Spicer v. Board of Options Exchange*, 844 F. Supp. 1226 (N.D Ill. 1993) (29% awarded); *Family L.P. v. Price Waterhouse LLP*, 2001 WL 1568856 (N.D. Ill. 2001) (33 1/3 % awarded); *Gilbert v. First Alert, Inc.*, 1998 WL 14206 (N.D. Ill. 1998); (30% awarded); *Goldsmith v. Technology Solutions Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. 1995) (33 1/3 % awarded); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000) (25% awarded).

This case was prosecuted by Plaintiff's counsel on a contingent fee basis with no assurance of any fee. In undertaking to prosecute this case on that basis, Plaintiff's counsel assumed a significant risk of nonpayment or underpayment. Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiff's counsel must be compensated adequately for the risk of non-payment); *Ressler v. Jacobsen*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

Class Counsel filed a well researched complaint alleging claims for relief under federal law and state law. Class Counsel also engaged in extensive settlement discussions. Additionally, Class Counsel undertook the administration of the settlement. In doing so, the vast majority of Class Members were properly contacted and provided the opportunity to participate in the settlement. Additionally, Class Counsel and its staff handled all inquiries and conducted

extensive follow ups with numerous Class Members in assisting to bring claim forms into compliance. As discussed above, those Settlement Class Members who have submitted claims will receive $346.54 from the Settlement Fund. In light of the work performed in this matter, which has involved the administration of a substantial nationwide class settlement, Class Counsel's request for an amount equal to 1/3 of the Settlement Fund, and reimbursement of notice and administrative expenses in the amount of $35.07 plus an anticipated $159.00 for delivery of Class Member Settlement payments, is reasonable. Accordingly, Class Counsel believes the amounts requested are reasonable and requests approval of $11,860.74 in fees and costs to class counsel.

V.     CONCLUSION.

For all the reasons set forth above, Plaintiff individually, and as a representative of the Settlement Class of similarly situated persons, by Class Counsel, requests that this Court grant final approval of the Agreement and enter the parties' proposed final approval order, attached hereto as Appendix D.

    Respectfully submitted,

    /s/ Dulijaza Clark
    Dulijaza Clark

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Dulijaza Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603
 (312) 739-4200
(312) 419-0379 (FAX)

**CERTIFICATE OF SERVICE**

       I, Dulijaza Clark, certify that on August 13, 2015, I caused a true and accurate copy of the foregoing document to be served, via the Court's CM/ECF system, upon the following parties:

    David S. Almeida
    Mark Stephen Eisen
    David Mitchell Poell
    Sheppard Mullin Richter & Hampton, LLP
    70 W. Madison Street
    48th floor
    Chicago, IL 60602
    312-499-6300
    312-499-6301 (fax)
    dalmeida@sheppardmullin.com
    meisen@smrh.com
    dpoell@sheppardmullin.com


                                                     /s/ Dulijaza Clark
                                                     Dulijaza Clark

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Dulijaza Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)